**FILED**

FEB 0 5 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD MUSGRAVE,<br><br>Plaintiff,<br><br>v.<br><br>ICC/MARIE CALLENDER'S GOURMET PRODUCTS DIVISION,<br><br>Defendant. | Case No. 14-cv-02006-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, DENYING MOTION TO STRIKE AND GRANTING REQUESTS FOR JUDICIAL NOTICE**<br><br>ECF Nos. 25, 30, 39. |

Before the Court is Defendant ICC/Marie Callender's Gourmet Products Division's Motion to Dismiss Plaintiff's Complaint and Motion to Strike; Plaintiff's Request for Judicial Notice in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint and Motion to Strike; and Defendant's Request for Judicial Notice in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike. ECF Nos. 25, 30, 39. The Court will GRANT IN PART and DENY IN PART the Motion to Dismiss, DENY the Motion to Strike, and GRANT the parties' requests for judicial notice.

## I.  BACKGROUND

### A.  Factual History

For the purpose of deciding these motions, the Court accepts as true the following factual allegations from Plaintiff's First Amended Complaint ("FAC").[1] ECF No. 28.

Defendant ICC/Marie Callender's Gourmet Products Division ("Marie Callender's")

---

[1] The First Amended Complaint was filed shortly after the Motion to Dismiss, but contained no changes to any of the material allegations in the operative complaint. ECF No. 27. The amended complaint dismissed with prejudice all claims against defendants Marie Callender's Gourmet Products Division/ICC and Marie Callender Pie Shop's, Inc. and added as a defendant ICC/Marie Callender's Gourmet Products Division. Id.

United States District Court
Northern District of California

advertises, markets, sells, and distributes a variety of bread and muffin mixes that are labeled "all natural." Id. ¶¶ 3, 18. Marie Callender's also promotes its products as "all natural" through web pages, social media, and food expositions. Id. ¶ 24-28.

Plaintiff Edward Musgrave is "very concerned about consuming foods that are not natural, such as foods using synthetic or artificial chemical ingredients" and "is willing to and has paid a premium for foods that are considered 'all natural.'" Id. ¶ 10. Plaintiff has refrained from buying foods that are not "all natural." Id.

After reading and relying on the truthfulness of Marie Callender's "all natural" labels, Plaintiff purchased items such as Marie Callender's Original Corn Bread Mix and Marie Callender's Honey Butter Corn Bread Mix at least eighteen times within the past three years at five different retailers in California. Id. ¶ 11. These products — and five similar products also labeled "all natural" — contain Sodium Acid Pyrophosphate ("SAPP"). Id. ¶¶ 3, 29-31. SAPP is a synthetic ingredient that a reasonable consumer would not expect to be in a product labeled "all natural." Id. ¶¶ 29-31, 45-52. This understanding is consistent with United States Food and Drug Administration ("FDA") and Department of Agriculture ("USDA") statements defining "natural" products to exclude the use of synthetic ingredients. Id. ¶¶ 45-52.

Plaintiff alleges that Defendant knowingly misrepresented its products as "all natural" to cultivate a "wholesome, healthful and socially conscious image" among consumers. Id. ¶¶ 53–61. As a direct and proximate result of Defendant's deceptive conduct, Plaintiff states that he and a purported class of consumers were misled into purchasing products, ingesting ingredients, and supporting a company that contributes to environmental, ecological, or health damage. Id. ¶ 68.

**B.    Procedural History**

Plaintiff Edward Musgrave commenced this action by filing a complaint on May 1, 2014. ECF No. 1. He filed a motion for leave to file the First Amended Complaint on July 29, 2014, ECF No. 23, and the motion was granted on August 25, 2014. ECF No. 27. Defendant filed its Motion to Dismiss Plaintiff's Complaint and Motion to Strike on August 19, 2014. ECF No. 25. Musgrave asserts the following claims for relief: (1) deceptive advertising, pursuant to California Business & Professions Code § 17500, et seq. (California class only); (2) violation of the

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1   Consumer Legal Remedies Act, California Civil Code § 1750, et seq. (California class only);

2   (3) common law fraud (California and national classes); (4) negligent misrepresentation

3   (California and national classes); (5) breach of express warranty (California class only); (6) breach

4   of contract (California and national classes); (7) unfair business practices, pursuant to California

5   Business and Professions Code §§ 17200-17208, including unlawful, unfair, and fraudulent prongs

6   (California class only); (8) quasi-contract/ unjust enrichment (California and national classes).

7   ECF No. 28.

8           **C.      Jurisdiction**

9           In his First Amended Complaint, Plaintiff stated that this Court has jurisdiction under 28

10  U.S.C. § 1331 and/or 28 U.S.C. § 1332, and that supplemental jurisdiction to adjudicate issues

11  pertaining to state law is proper under 28 U.S.C. § 1367.  ECF No. 28 at 3.  In response to this

12  Court's Order to Show Cause Why the Complaint Should Not Be Dismissed for Lack of Subject

13  Matter Jurisdiction, Plaintiff has since clarified that the Court has jurisdiction under the Class

14  Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d).  ECF No. 46 at 3-4.  On December 1,

15  2014, the Court issued an order finding that Plaintiff's allegations are sufficient to establish

16  jurisdiction under the CAFA.  ECF No. 47 at 2.

17  **II.      REQUESTS FOR JUDICIAL NOTICE**

18          Both parties have filed requests for judicial notice.  Although a court's review on a motion

19  to dismiss is generally limited to the allegations in the complaint, the Court may properly take

20  judicial notice of material attached to the complaint and of matters of public record pursuant to

21  Federal Rule of Evidence 201.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

22  A court may thus take judicial notice of matters of public record without converting a motion to

23  dismiss into a motion for summary judgment, but it may not take judicial notice of a fact that is

24  subject to reasonable dispute.  Id. at 689.  A court "must take judicial notice if a party requests it

25  and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2); see Sato v.

26  Wachovia Mortg., FSB, No. 11-cv-00810-EJD (PSG), 2011 WL 2784567, at *2 (N.D. Cal. July

27  13, 2011).

28          In support of the Motion to Dismiss and Motion to Strike, Defendant requests that the

1    Court take judicial notice of: (1) 7 C.F.R. § 205.605(b); (2) a January 6, 2014, Department of

2    Health and Human Services Letter, Cox v. Gruma Corp., No. 12-cv-06502-YGR (N.D. Cal. Jan. 7,

3    2014), ECF No. 70; and (3) Pelayo v. Nestle USA, Inc., No. 13-cv-05213-JFW-AJW (C.D. Cal.

4    Oct 25, 2013), ECF No. 49.  ECF No. 39, Exs. A, B, C.  Plaintiff does not oppose Defendant's

5    request.  The Court finds these documents appropriate for judicial notice as documents in the

6    public record not reasonably subject to dispute because their accuracy can readily be determined

7    from sources whose accuracy cannot reasonably be questioned.  Accordingly, the Court GRANTS

8    Defendant's request for judicial notice.

9            In support of his Opposition to Defendant's Motion to Dismiss and Motion to Strike,

10    Plaintiff Musgrave requests that the Court take judicial notice of: (1) a November 16, 2011, U.S.

11    Food and Drug Administration Warning Letter to Alexia Foods, Inc.; and (2) Neal v. NaturalCare,

12    Inc., No. EDCV 12-00531 DOC (OPx) (C.D. Cal. Dec. 20, 2012), ECF No. 44.  ECF No. 30, Exs.

13    A, B.  Defendant opposes Plaintiff's request for judicial notice.  ECF No. 37.  Defendant

14    acknowledges that the Court may take judicial notice pursuant to Federal Rule of Evidence 201 of

15    "matters of public record" and facts not subject to reasonable dispute, Lee, 250 F.3d at 689, but

16    objects that Plaintiff's complaint does not rely on either document; that both documents are

17    unauthenticated; that the FDA warning letter is not an "official act;" and that taking judicial notice

18    of the official acts of a governmental entity does not require the Court to accept the truth of factual

19    matters that might be deduced therefrom.  ECF No. 37.  In his response, Plaintiff explains that he

20    seeks judicial notice only of the fact that FDA sent the warning letter and the fact that the court

21    issued the order in Neal v. NaturalCare; he does not ask this Court to accept as true any of the

22    facts stated in these documents.  ECF No. 44 at 2-3.

23            Documents available through government agency websites are often considered

24    appropriate for judicial notice as documents in the public record not reasonably subject to dispute.

25    See Garrison v. Whole Foods Mkt. Grp., Inc., No. 13-CV-05222-VC, 2014 WL 2451290, at *1 n.2

26    (N.D. Cal. June 2, 2014) (finding the same FDA warning letter appropriate for judicial notice);

27    Gustavson v. Wrigley Sales Co., 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) ("The Court

28    may take judicial notice of materials available on government agency websites."); Hansen

United States District Court
Northern District of California

1    <u>Beverage Co. v. Innovation Ventures, LLC</u>, No. 08-CV-1166-IEG (POR), 2009 WL 6597891, at

2    *2 (S.D. Cal. Dec. 23, 2009) ("Information on government agency websites has often been treated

3    as properly subject to judicial notice."). Similarly, the court order Plaintiff submitted is

4    appropriate for judicial notice. "[W]e may take notice of proceedings in other courts . . . if those

5    proceedings have a direct relation to matters at issue." <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1225

6    (9th Cir. 2007) (internal quotation marks omitted). The Court therefore GRANTS Plaintiff's

7    request for judicial notice.

8    **III.  MOTION TO DISMISS**

9         Defendant Marie Callender's moves to dismiss Plaintiff Musgrave's complaint on several

10   grounds: (1) Plaintiff's claims are impliedly and expressly preempted; (2) Plaintiff's claims invade

11   the primary jurisdiction of the FDA; (3) Plaintiff fails to allege a plausible theory of deception;

12   (4) Plaintiff has failed to plead his claims with particularity; (5) Plaintiff lacks standing to pursue

13   claims based on products he did not purchase; and (6) Plaintiff's claims for injunctive relief,

14   unjust enrichment, express warranty, breach of contract, and damages under the Consumers Legal

15   Remedies Act fail as a matter of law. ECF No. 25 at i, 1-2. The Court considers these arguments

16   in turn.

17      **A. Legal Standard**

18        A complaint must contain "a short and plain statement of the claim showing that the

19   pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and

20   the grounds upon which it rests." Fed R. Civ. P. 8(a)(2); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

21   544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual

22   matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>,

23   556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility

24   when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

25   the defendant is liable for the misconduct alleged." <u>Id.</u> The Court must "accept all factual

26   allegations in the complaint as true and construe the pleadings in the light most favorable to the

27   nonmoving party." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1072 (9th Cir. 2005).

28        Fraud claims are subject to a heightened pleading standard. "In alleging fraud or mistake,

United States District Court
Northern District of California

a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)). To meet this standard, a "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)).

**B. Preemption**

Defendant first argues that Plaintiff's claims are impliedly and expressly preempted by the Food, Drug, and Cosmetics Act ("FDCA"). ECF No. 25 at 6.

Federal law preempts a lawsuit based on state law claims when (1) Congress enacts a statute that explicitly preempts state law; (2) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field; or (3) state law actually conflicts with federal law. See Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992). "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." Wyeth v. Levine, 555 U.S. 555, 565 (2009).

> [I]n all pre-emption cases, and particularly in those in which Congress has "legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

Id. (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). States have traditionally possessed the power to protect their citizens from fraud and deception in the sale of food, and therefore there is a presumption against federal preemption in the area of marketing food. See Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 144 (1963).

6

Defendant argues that Plaintiff's claims are impliedly preempted by the "detailed, rigorous, comprehensive, and uniform" federal system for labeling food products and expressly preempted because he seeks to impose requirements that are different from or in addition to federal requirements in violation of the Nutrition Labeling and Education Act of 1990.  ECF No. 25 at 7, 9-10; 21 U.S.C. § 343-1 (states may not establish or continue in effect food labeling requirements that are not identical to federal requirements); see Stengel v. Medtronic Inc., 704 F.3d 1224, 1231–33 (9th Cir. 2013) (distinguishing between state law requirements that are different from or in addition to federal requirements and those that parallel the federal scheme).  The Ninth Circuit has explained that a state-law claim must fit through a "narrow gap" in order to escape preemption by the FDCA: "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted . . . ), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted . . .)."  Perez v. Nidek Co., Ltd., 711 F.3d 1109, 1120 (9th Cir. 2013).

The Court concludes that Plaintiff Musgrave's claims fit through this narrow gap.  See Garrison, 2014 WL 2451290, at *2 ("Accordingly, the Court joins the other courts of this district that have rejected the argument that claims based on a misleading 'all natural' label are preempted.").  The FDCA prohibits false or misleading labeling, 21 U.S.C. § 343(a), and the FDA has articulated a policy defining "natural" to exclude the use of synthetic substances.  ECF No. 28 ¶ 48.

> The conduct Plaintiff[] allege[s] — that [Defendant] misled customers by labeling as "All Natural" food products that contain SAPP, a synthetic ingredient — thus violates the FDCA.  Plaintiff[] ha[s] not, however, sued *because* the conduct violates the FDCA. Rather, [his] claims are based on California statutes as well as the common law, law that could exist even if the FDCA were never passed.

Garrison, 2014 WL 2451290, at *2 (internal quotation marks omitted).  Because Plaintiff seeks to enforce California laws that parallel federal requirements, rather than creating additional or different requirements, his claims do not run afoul of the test articulated in Perez.

For the foregoing reasons, this Court finds that Plaintiff's claims are neither impliedly nor

United States District Court
Northern District of California

1   expressly preempted by federal law, and therefore DENIES Defendant's motion to dismiss on

2   these grounds.

3   **D.      Primary Jurisdiction**

4   Defendant next argues that Plaintiff's claims should be dismissed because they depend on

5   federal regulations that fall within the primary jurisdiction of the FDA.  In the alternative,

6   Defendant requests that the Court stay the case pending the resolution of a petition that the

7   Grocery Manufacturers Association "intends to file" at some uncertain point in the future.  ECF

8   No. 25 at 11-13.

9   The doctrine of primary jurisdiction applies in a "limited set of circumstances."  Clark v.

10   Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008).  It permits courts to stay proceedings, or

11   to dismiss a complaint without prejudice, "pending the resolution of an issue within the special

12   competence of an administrative agency."  Id.  The doctrine is prudential; it applies when "a court

13   determines that an otherwise cognizable claim implicates technical and policy questions that

14   should be addressed in the first instance by the agency with regulatory authority over the relevant

15   industry rather than by the judicial branch."  Id.  A court's decision to invoke the primary

16   jurisdiction doctrine "does not indicate that it lacks jurisdiction."  Id.

17   Courts generally look to the following factors in evaluating the propriety of invoking the

18   primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by

19   Congress within the jurisdiction of an administrative body having regulatory authority (3)

20   pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority

21   that (4) requires expertise or uniformity in administration."  Syntek Semiconductor Co., Ltd. v.

22   Microchip Tech. Inc., 307 F.3d 775, 781 (9th Cir. 2002).  However, applying the doctrine is only

23   appropriate if a claim "requires resolution of an issue of first impression, or of a particularly

24   complicated issue that Congress has committed to a regulatory agency," and if "'protection of the

25   integrity of a regulatory scheme dictates preliminary resort to the agency which administers the

26   scheme.'"  Brown v. MCI WorldCom Network Servs., Inc., 277 F.3d 1166, 1172 (9th Cir. 2002)

27   (quoting United States v. Gen. Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987)).  Also

28   crucial is "whether application will enhance court decision-making and efficiency by allowing the

United States District Court
Northern District of California

United States District Court
Northern District of California

1  court to take advantage of administrative expertise." Chabner v. United of Omaha Life Ins. Co.,

2  225 F.3d 1042, 1051 (9th Cir. 2000).  For example, the Ninth Circuit has approved of district

3  courts' invocation of the doctrine "where it is unclear whether a federal statute applies to a new

4  technology." Clark, 523 F.3d at 1115.

5  Defendant argues that all factors weigh in favor of applying the primary jurisdiction

6  doctrine, as food labeling is within the special competence of the FDA.  ECF No. 25 at 12.  In

7  Defendant's view, Plaintiff's claims are "particularly inappropriate because the FDA has been

8  struggling with the creation of a meaning of 'natural' in the food-labeling context for over two

9  decades." Id.  Defendant cites a letter filed by the FDA in Cox v. Gruma Corp., 12-cv-06502-

10  YGR (N.D. Cal. Jan. 7, 2014), ECF No. 70, which involves whether food products containing

11  genetically modified ingredients may be labeled "all natural," for the proposition that issues of this

12  complexity require engagement with the public through a formal regulatory process.  ECF No. 25

13  at 12.

14  The Court rejects this argument.  "The primary jurisdiction doctrine does not require that

15  all claims within an agency's purview be decided by the agency.  Nor is it intended to secure

16  expert advice for the courts from regulatory agencies every time a court is presented with an issue

17  conceivably within the agency's ambit." Allen v. ConAgra Foods, Inc., 13-cv-01279-JST, 2013

18  WL 4737421, at *9 (N.D. Cal. Sept. 3, 2013) (quoting Brown, 277 F.3d at 1172) (internal

19  quotation marks omitted).  The crux of the issue in this case is whether Defendant's use of the term

20  "all natural" is misleading to consumers if its product contains a synthetic ingredient.  This

21  determination does not require the particular expertise of the FDA.  See Lockwood v. ConAgra

22  Foods, Inc., 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) ("[Use of the term 'natural'] is not a

23  technical area in which the FDA has greater technical expertise than the courts—every day courts

24  decide whether conduct is misleading.").

25  Furthermore, this case is distinguishable from Cox v. Gruma Corp.  In that case, the parties

26  were "in agreement that the FDA has not addressed, even informally, the question of whether

27  foods containing [genetically modified organisms] or bioengineered ingredients may be labeled

28  'natural' or 'all natural,' or whether [genetically modified organisms] or bioengineered ingredients

would be considered 'artificial or synthetic.'" Cox v. Gruma Corp., No. 12-cv-6502-YGR, 2013 WL 3828800, at *2 (N.D. Cal. July 11, 2013). There is no such agreement in this case. The FDA has articulated a policy establishing that a product is not natural if it contains color, artificial flavors, or synthetic substances and Plaintiff alleges that SAPP is a synthetic substance. ECF No. 28 ¶¶ 28-29, 48. This is not a case in which further guidance from the FDA is necessary in order for the Court to decide the case.

For the foregoing reasons, this Court finds that Plaintiff's claims do not invade the primary jurisdiction of the FDA. The Court therefore DENIES Defendant's motion to dismiss Plaintiff's complaint on this ground and Defendant's request for a stay pending the resolution of an administrative proceeding that may begin if the Grocery Manufacturer's Association chooses to file an "expected" but unconfirmed petition at some point in the future.

**E.      Plausibility of Plaintiff's Claims**

Defendant argues that Plaintiff has failed to allege plausible claims, both because he has not plausibly alleged that a reasonable consumer is likely to be deceived by Marie Callender's labels and because he has not plausibly alleged that he was deceived or injured. ECF No. 25 at 13, 16.

**1.      The Reasonable Consumer Test**

The parties agree that Plaintiff's statutory and common law false advertising claims are governed by the "reasonable consumer" test. See Williams v. Gerber, 552 F.3d 934, 938 (9th Cir. 2008) ("Appellants' claims under [California's Unfair Competition Law and Consumers Legal Remedies Act] are governed by the 'reasonable consumer' test."); Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995) ("the reasonable person standard is well ensconced in the law in a variety of legal contexts in which a claim of deception is brought . . . [including] misrepresentation and for common law unfair competition" ); Girard v. Toyota Motor Sales, U.S.A. Inc., 316 Fed Appx. 561, 562 (9th Cir. 2008) (unpublished) (equating "justifiable reliance" element of negligent misrepresentation with the "reasonable consumer" standard). Under this test, Plaintiff must show that "members of the public are likely to be deceived." Freeman, 68 F.3d at 289. Whether a business practice is deceptive is usually a question of fact not appropriate for decision on a motion

United States District Court
Northern District of California

1    to dismiss.  See Williams, 552 F.3d at 938.

2            Defendant argues that Plaintiff fails to allege with sufficient plausibility that a reasonable

3    consumer is likely to be deceived by the term "all natural."  ECF No. 25 at 13.  First, Defendant

4    contends that Plaintiff's claims are implausible because he "offers two inconsistent meanings of

5    'natural.'"  Id. at 14.  This argument misunderstands the inquiry.  Here, the question is simply

6    whether Plaintiff can plausibly show that a reasonable consumer would not expect SAPP to be in

7    food that is labeled "all natural."  See Williams, 552 F.3d at 940 ("Appellants have stated a claim

8    and could plausibly prove that a reasonable consumer would be deceived by the Snacks

9    packaging.").  Plaintiff need not allege that every consumer shares the same definition of "all

10   natural," only that a reasonable consumer could interpret these words to exclude synthetic

11   compounds.  Garrison, 2014 WL 2451290, at *2–3.

12           Next, Defendant argues that "Plaintiff fails to allege *how* SAPP fails to meet any of the

13   proffered understandings of the term 'natural.'"  ECF No 25 at 14.  Again, Plaintiff's burden at this

14   stage is only to show that it is plausible that a reasonable consumer would expect that food labeled

15   "all natural" does not contain SAPP.  Plaintiff alleges that SAPP –"an odorless white powder, also

16   referred to as disodium dihydrogen pyrophosphate and/or disodium pyrophosphate" – is a

17   "synthetic product."[2]  ECF No. 28 ¶¶ 29-30.  Plaintiff further alleges that under FDA policy, "a

18   product is not 'natural' if it contains . . . synthetic substances."  Id. ¶ 48.  These allegations are

19   sufficient to establish that a reasonable consumer could plausibly conclude that an "all natural"

20   food product should not include SAPP.

21           Last, Defendant argues that Plaintiff fails to explain how a reasonable consumer would be

22   surprised to find SAPP in a product labeled "all natural," given that USDA regulations allow food

23   manufacturers to include SAPP in products which are labeled "organic," a designation which,

24   Defendants state, involves more restrictive regulation.  ECF No 25 at 15.  But "there is no

25   evidence in the record that reasonable consumers are even aware of the USDA regulations

26

27   [2] To further support his assertion that a reasonable consumer would conclude that SAPP is a
     synthetic ingredient, Plaintiff has requested that the Court take judicial notice of an FDA warning
28   letter that explicitly identifies SAPP as "a synthetic chemical preservative."  ECF No. 30, Ex A.

11

United States District Court
Northern District of California

regarding the definition of the term 'organic,' let alone that these consumers assume that definition applies to 'natural' foods as well." Garrison, 2014 WL 2451290, at *3.

For the foregoing reasons, this Court finds that Plaintiff's claims allege with sufficient plausibility that a reasonable consumer is likely to be deceived by the term "all natural." Defendant's motion to dismiss on these grounds is DENIED.

### 2.   Plaintiff's Injury

Defendant asserts that Plaintiff also fails to plausibly allege that he was personally deceived or injured. ECF No. 25 at 16-17. Contrary to Defendant's arguments, the Court finds that Plaintiff has adequately alleged that he was misled by the labels on the products at issue and that he experienced economic injury. According to the complaint, Musgrave purchased Marie Callender's products "after reading and relying on the truthfulness of labels that promised that these Products were 'all natural.'" ECF No. 28 ¶ 11. He "not only purchased the Products because their labels said they were 'all natural,' but paid more money for the Products than he would have paid for other similar products that were not all natural." Id. ¶ 12. Finally, Plaintiff alleges that had he known that the products were not "all natural," he would have purchased other "all natural" brands or, if such alternatives were not available, would have purchased less expensive non-natural food products. Id. ¶ 13. These allegations are sufficient to state plausible claims of reliance and causation. Defendant's motion to dismiss on these grounds is therefore DENIED.

### F.   Specificity of the Pleadings

Defendant argues that Plaintiff has failed to comply with Federal Rule of Civil Procedure 9(b), which requires that a party alleging fraud "must state with particularity the circumstances constituting fraud." ECF No. 25 at 17. "Rule 9(b) demands that the circumstances constituting the alleged fraud be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns, 567 F.3d at 1124 (quoting Bly–Magee, 236 F.3d at 1019). To meet this standard, a "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is

United States District Court
Northern District of California

1   false.'" Salameh, 726 F.3d at 1133 (quoting Cafasso, 637 F.3d at 1055).

2   Rule 9(b) applies to Plaintiff's claims, which depend entirely on Defendant's alleged

3   fraudulent misrepresentations that the products at issue are "all natural." See ECF No. 28 ¶¶ 1-5.

4   Thus, each of Plaintiff's claims is "grounded in fraud" such that the particularity requirement of

5   Rule 9(b) must be satisfied. See Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th

6   Cir. 2003). Plaintiff does not dispute that Rule 9(b) governs each of his claims.

7   Here, Plaintiff has specified which product labels contained misrepresentations, attached

8   photograph exhibits of the challenged labels to the complaint, and included links to various

9   websites demonstrating Defendant's use of the term "all natural" to describe products that contain

10   SAPP. ECF No. 28 ¶¶ 3, 24-28, Attach. A. Plaintiff also clearly describes the allegedly

11   misleading statements—products containing a synthetic ingredient were labeled "all natural."

12   ECF No. 28 ¶ 3. Plaintiff states that he personally purchased Defendant's products, in reliance on

13   the truthfulness of the "all natural" labels, at least eighteen times over the past three years,

14   specifying five retailers and their locations. Id. ¶ 11. He describes with specificity the social

15   media, advertising, blog posts, and food shows used to promote Defendant's "all natural"

16   products. Id. ¶ 24-27. These statements are sufficient to establish "the who, what, when, where,

17   and how of the misconduct charged" so that Defendant has sufficient notice to defend against this

18   suit. Salameh, 726 F.3d at 1133.

19   The Court finds the Plaintiff has pleaded his deception and misrepresentation claims with

20   the required degree of particularity. Defendant's motion to dismiss on FRCP 9(b) grounds is

21   DENIED.

22   **G.     Products that Plaintiff Did Not Purchase**

23   Defendant argues that if the Court does not dismiss the entirety of Plaintiff's complaint on

24   the bases discussed above, it should limit the scope of the claims because Plaintiff does not have

25   standing to challenge the labels on products he did not personally purchase. ECF No. 25 at 18-19.

26   Defendant argues that Plaintiff lacks Article III standing to assert claims related to these products,

27   see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992), and furthermore that Plaintiff

28   fails to meet the narrower standing requirements of the California consumer protection statutes,

United States District Court
Northern District of California

13

1    which require that Plaintiff show that he has suffered an "economic injury," see Kwikset Corp. v.

2    Superior Court, 51 Cal. 4th 310, 323-24 (2011).  ECF No. 25 at 19-22.

3         For reasons more fully explained in the undersigned's order in Clancy v. Bromley Tea Co.,

4    the fact that Plaintiff did not purchase all of the same products as the members of the class he

5    proposes to represent does not deprive the Court of subject-matter jurisdiction over this action.

6    No. 12-cv-03003-JST, 2013 WL 4081632, at *3-6 (N.D. Cal. Aug. 9, 2013); see also Greenwood

7    v. Compucredit Corp., No. 08-cv-04878-CW, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010)

8    ("'Representative parties who have a direct and substantial interest have standing; the question

9    whether they may be allowed to present claims on behalf of others who have similar, but not

10   identical, interests depends not on standing, but on an assessment of typicality and adequacy of

11   representation.'") (quoting 7AA Wright et al., Federal Practice and Procedure (3d. 2005) § 1758.1

12   pp. 388-89).

13        The Ninth Circuit's "[standing] law keys on the representative party, not all of the class

14   members, and has done so for many years." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1021

15   (9th Cir. 2011) cert. denied, 132 S. Ct. 1970 (2012); see also Bates v. United Parcel Serv., Inc.,

16   511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("In a class action, standing is satisfied if at least one

17   named plaintiff meets the requirements."). This is true whether or not the products are "similar."

18   See ECF No. 25 at 21. "Whether products are 'sufficiently similar' is an appropriate inquiry, but

19   it does not relate to standing: a plaintiff has no more standing to assert claims relating to a

20   'similar' product he did not buy than he does to assert claims relating to a 'dissimilar' product he

21   did not buy." Clancy, 2013 WL 4081632, at *5.  Moreover, even if this Court were to apply the a

22   similarity test, Plaintiff's claims would pass, since the products at issue are all baking mixes

23   manufactured by the same Defendant, labeled with the same "all natural" claim, and made with

24   the same ingredient, SAPP.  Plaintiff does not have standing to assert claims related to products he

25   did not buy.  But he may seek to represent a class of people who purchased those products.

26        As for standing under California's Unfair Competition Law (UCL) and Consumers Legal

27   Remedies Act (CLRA), Defendant argues that "Plaintiff must show he has suffered an 'economic

28   injury,'" citing Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011).  There, the California

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Supreme Court explained that "[t]here are innumerable ways in which economic injury from

2  unfair competition may be shown." Id. at 323. Further, "[w]hile the economic injury requirement

3  is qualitatively more restrictive than federal injury in fact, embracing as it does fewer kinds of

4  injuries . . . the quantum of lost money or property necessary to show standing is only so much as

5  would suffice to establish injury in fact." Id. at 324. Neither requirement is "a substantial or

6  insurmountable hurdle." Id. In this case, Plaintiff has alleged that he "paid more money for the

7  Products than he would have paid for other similar products that were not all natural (i.e. products

8  that admittedly contained man-made, synthetic ingredients)" and that "had [he] known the truth

9  that Defendant's Products were not 'all natural,'" he would have chosen to purchase "other brands

10  of food products that were truly 'all natural' or, if such alternatives were not available, would have

11  purchased other non-natural food products that were less expensive than Defendant's All Natural

12  Products." ECF No. 28 ¶ 12-13. These allegations sufficiently allege that Plaintiff suffered

13  economic injury.

14      The Court concludes that Plaintiff has standing to pursue his claims at this stage. The

15  Court will determine at class certification whether Plaintiff may represent the proposed class,

16  including individuals who purchased Marie Callender's products that Plaintiff did not purchase

17  himself.

18  **H.    Injunctive Relief**

19      Defendant argues that Plaintiff is not entitled to injunctive relief because he cannot

20  demonstrate that there is a sufficient likelihood that he will be wronged in the future. ECF No. 25

21  at 22. See Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007). Plaintiff has

22  alleged that had he known the Marie Callender's products he purchased contained SAPP, he

23  would not have purchased them. ECF No. 28 ¶ 13. Because Plaintiff now understands that the

24  products contain SAPP, Defendant argues that there is no danger that he will purchase these

25  products in the future and there is no "real and immediate threat of repeated injury." ECF No. 25

26  at 22 (citing Bates, 511 F.3d at 985).

27      Courts in this district have reached conflicting conclusions regarding whether a consumer

28  plaintiff may seek injunctive relief where he has stopped buying a defendant's products after

learning that they were mislabeled.  Compare Pratt v. Whole Foods Mkt. California, Inc., No. 12-cv-05652-EJD, 2014 WL 1324288, at *9 (N.D. Cal. Mar. 31, 2014) (allowing a claim for injunctive relief to proceed where Defendants had not demonstrated that the products at issue had been discontinued), with Garrison, 2014 WL 2451290, at *5 (plaintiffs are limited to seeking damages where there is no threat that they will be misled in the future).  This Court disagrees with Defendant that Plaintiff's injunctive relief claim must fail simply because he has now realized that Defendant's product contains SAPP.  However, courts rejecting the argument that a plaintiff cannot sue for injunctive relief if he has learned that a label is misleading and therefore will not be fooled by it again "require plaintiffs to express an intent to purchase the products in the future." Jones v. ConAgra Foods, Inc., No. 12-cv-01633-CRB, 2014 WL 2702726 at *12 (N.D. Cal. June 13, 2014).  Here, Plaintiff states that he purchased Marie Callender's products and that he suffered damages and injury, but does not indicate that he maintains an interest in purchasing Marie Callender's baking mix products in the future. ECF No. 28 ¶¶ 12-14.  In this circumstance, the Court finds that Plaintiff has not sufficiently alleged standing to pursue injunctive relief.  See Jou v. Kimberly-Clark Corp., 13-cv-03075-JSC, 2013 WL 6491158, at *4 (N.D. Cal. Dec. 10, 2013). The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's demand for injunctive relief.  This dismissal is without prejudice to Plaintiff amending his complaint.

I.      **Unjust Enrichment Claim**

Defendants seek dismissal of Plaintiff's unjust enrichment claim, arguing that there is no cause of action in California for unjust enrichment, that Plaintiff has failed to specify which state or states' laws should apply with respect to a nationwide class, and that, regardless of these deficiencies, Plaintiff's unjust enrichment claim is duplicative of his other statutory and common law claims. ECF No. 25 at 22-23.

Defendant is correct that this claim duplicates Plaintiff's other statutory and common law claims. See, e.g., Garrison, 2014 WL 2451290, at *6; In re Apple & AT&T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory of tort claims."); Collins v. eMachines, Inc., 202 Cal.App. 4th 249, 260 (2011) ("Because we have found that plaintiffs' remedies at law

16

1    are adequate . . . , a claim for restitution, alleging that [the defendant] has been unjustly enriched

2    by its fraud, is unnecessary.")  Plaintiff's unjust enrichment claim is therefore DISMISSED with

3    prejudice.

4         **J.**     **Breach of Warranty Claim**

5         "[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the

6    seller's statements constitute an affirmation of fact or promise or a description of the goods; (2)

7    the statement was part of the basis of the bargain; and (3) the warranty was breached."  Weinstat v.

8    Dentsply Int'l., Inc., 180 Cal. App. 4th 1213, 1227 (2010) (internal quotation marks omitted).

9    Defendant argues that Plaintiff's claim fails because he has not alleged that Defendant's

10   representation that its products are "all natural" was part of the basis of the bargain between the

11   parties and because he has not adequately pleaded that the warranty, if any, created by this

12   representation was breached by the inclusion of SAPP in the products.  ECF No. 25 at 23.

13   Defendant also notes that Plaintiff purchased only two of the products at issue and therefore saw

14   and relied only on those labels.  Id.

15        Plaintiff has alleged that the use of the words "all natural" in Defendant's advertising and

16   labeling constituted "promises and affirmations of fact" that "became part of the basis of the

17   bargain between" Plaintiff and other members of the California class on one hand, and Defendant

18   on the other.  ECF No. 28 at ¶ 113.  He further alleges that the warranty created by this

19   representation was breached by the inclusion of SAPP, a synthetic ingredient.  Id. ¶¶ 115-16.  The

20   Court concludes that these allegations are sufficient to state a claim for breach of express

21   warranty.  See Garrison, 2014 WL 2451290, at *6.  Defendant's motion to dismiss is DENIED

22   with respect to this claim.

23        **K.**     **Consumer Legal Remedies Act Damages**

24        To bring a claim for damages under the Consumers Legal Remedies Act ("CLRA"), at

25   least thirty days prior to filing the complaint, a consumer must notify the defendant and demand

26   that the alleged violations be corrected.  Cal. Civ. Code § 1782; Davis v. Chase Bank U.S.A.,

27   N.A., 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009) ("compliance with the notice requirement is

28   necessary to state a claim" (internal quotation marks omitted)).  Defendant argues that Plaintiff has

United States District Court
Northern District of California

United States District Court
Northern District of California

1    failed to adequately allege that he has satisfied the CLRA pre-suit notice requirement, and that his

2    claims for damages under the CLRA should be dismissed with prejudice.  ECF No. 25 at 24.

3          Plaintiff points out that the Complaint clearly states that Plaintiff is seeking injunctive

4    relief under the California Consumers Legal Remedies Act.  ECF No. 28 ¶ 95.  Plaintiff indicates

5    that he "will amend this Complaint to seek compensatory, monetary and punitive damages, in

6    addition to equitable and injunctive relief," id. ¶ 97, but Plaintiff has not yet lodged any such

7    request.  At the current time, there are therefore no claims for damages under the CLRA to be

8    dismissed.

9          **L.    Breach of Contract**

10         Finally, Defendant argues that Plaintiff's contract claim fails because a food product label

11   does not constitute a contract between a purchaser and the manufacturer of the product and, even

12   assuming that it did, any contract would include the disclosed use of SAPP on the ingredient list.

13   ECF No. 25 at 24-25.  In Defendant's view, the use of SAPP could not violate any alleged contract

14   because the use of this admittedly synthetic ingredient would be part of the purported contract.  Id.

15   Plaintiff acknowledges that contracts should be interpreted to give effect to every part of the

16   agreement, but objects that consumers do not have a duty to research every ingredient to validate

17   health and nutritional claims displayed on food labels and could not be expected to know that

18   SAPP is a synthetic ingredient.  ECF No. 29 at 23-24; see Williams, 552 F.3d at 939-40 ("We

19   disagree . . . that reasonable consumers should be expected to look beyond misleading

20   representations on the front of the box to discover the truth from the ingredient list in small print

21   on the side of the box. . . . We do not think that the FDA requires an ingredient list so that

22   manufacturers can mislead consumers and then rely on the ingredient list to correct those

23   misinterpretations and provide a shield for liability for the deception.").

24         The Court rejects Defendants' argument that the breach of contract claim must fail.

25   Plaintiff has sufficiently alleged a breach of contract by claiming that: (1) Plaintiff and members

26   of both proposed classes had a valid contract pursuant to which Defendant was obligated to

27   provide food products which were "all natural;" (2) Plaintiff performed by purchasing the products

28   at issue; (3) Defendant breached the contract by providing products that were not "all natural;" and

United States District Court
Northern District of California

1  (4) Plaintiff and members of both classes were damaged by Defendant's breach.  ECF No. 28

2  ¶¶ 118-21.  The fact that SAPP is included on the products' ingredient lists does not defeat the

3  breach of contract claim.  There is no evidence at this stage that a reasonable consumer would be

4  able to identify SAPP as a synthetic ingredient.  And even if Plaintiff knew at the time of purchase

5  that SAPP was synthetic and that it did not comport with his definition of "all natural," it would

6  not follow that Defendant had not breached the contract.  Rather, it would suggest that the

7  contract's terms were ambiguous or uncertain.  See Garrison, 2014 WL 2451290, at *6.  The

8  meaning of ambiguous or uncertain contract terms should be determined by a jury based on

9  "credible evidence concerning the parties' intentions," not by a judge as a matter of law.  Cotran v.

10  Rollins Hudig Hall Int'l, Inc., 17 Cal. 4th 93, 112 (1998).  Defendant's motion to dismiss the

11  breach of contract claim is therefore DENIED.

12  **IV.     MOTION TO STRIKE**

13  Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading . . .

14  any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The

15  function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise

16  from litigating spurious issues by dispensing with those issues prior to trial. . . ."  Whittlestone,

17  Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010).  Defendant asks the Court to strike

18  allegations concerning products that Plaintiff did not purchase and allegations concerning

19  Defendant's promotional materials, website, and advertising because Plaintiff does not allege that

20  he read or saw these materials before purchasing Defendant's products.  Defendant also states that

21  "Defendant ICC does not advertise, market, or sell the contested products."  ECF No. 25 at 25.

22  The Court disagrees with Defendant that these allegations are "immaterial" to the case.

23  Plaintiff sues on behalf of potential California and national classes.  As explained above, he may

24  bring claims based on products he did not purchase.  And even though Plaintiff has not alleged

25  that he personally relied on Defendant's website and advertising materials, these materials may be

26  relevant to class certification and absent class members' reliance on Defendant's promotional

27  materials.  Motions to strike are generally disfavored, and should typically be denied "unless it is

28  clear that the matter sought to be stricken could have no possible bearing on the subject matter of

the litigation." <u>Rosales v. Citibank, Federal Sav. Bank</u>, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." <u>In re Wal-Mart Stores, Inc. Wage & Hour Litig.</u>, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). The motion to strike is therefore DENIED.

## V.   CONCLUSION

For the reasons explained above, the parties' requests for judicial notice are GRANTED. Defendant's motion to strike is DENIED. With respect to Plaintiff's claim for injunctive relief, Defendant's motion to dismiss is GRANTED with leave to amend. With respect to Plaintiff's unjust enrichment claim, Defendant's motion to dismiss is GRANTED with prejudice. In all other respects, Defendant's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: February 5, 2015

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California